387 S.E.2d 307

**Randolph L. WOLFE and
Rose Marie Wolfe**

v.

**CITY OF WHEELING.**

**No. CC997.**

Supreme Court of Appeals of
West Virginia.

Nov. 20, 1989.

David J. Sims, Robert A. Yahn, Wheeling, for Randolph L. Wolfe and Rose Marie Wolfe.

John E. Artimez, Wheeling, for City of Wheeling.

McHugh, Justice:

This case presents the issue of when does an actionable "special" duty exist for a municipality to respond in a reasonable manner to an emergency call for firefighting services. We set forth herein a general test for determining whether a local governmental entity owes a special, as opposed to a public, duty.

I

The plaintiffs, the Wolfes, are the owners of a dwelling located on Wade Avenue, about 200 yards, or about one block, outside the city limits of the defendant, the City of Wheeling, West Virginia ("the city"). In the fall of 1983, the plaintiffs had been billed erroneously, that is, without the plaintiffs' request, by the city for a fire service fee of $25.00, for the fiscal year of July 1, 1983 through June 30, 1984. Pursuant to the payment plan, the plaintiffs paid the first half ($12.50) of the fire service fee on November 1, 1983. The second half was due on March 1, 1984. At the time the plaintiffs received the bill for the fire service fee, the plaintiffs, for reasons not contained in the record, had city water service, city sewage service and city garbage service furnished by the city.

Shortly after receiving the bill for the fire service fee, Mr. Wolfe, concerned with the validity of the fee as a form of excessive property tax, contacted the city's finance department, which is responsible for collecting the fire service fee. An employee of that department informed Mr. Wolfe that he would not receive firefighting services from the city if Mr. Wolfe did not pay the fire service fee.

Mr. Wolfe testified upon deposition that the city's ambulance and firefighting vehicles had responded to every emergency call on his street from the date in 1977 when the Wolfes had bought their dwelling in question. Mr. Wolfe also testified upon deposition that to his knowledge the Triadelphia volunteer fire department, which was the closest volunteer fire department to his property, had never responded to an emergency call on his street.

On January 11, 1984, at about 4:15 a.m., a fire started at the plaintiffs' dwelling. At Mr. Wolfe's request a neighbor called the county-wide emergency telephone number at 4:16 a.m. to report the fire and to obtain firefighting services. The dispatcher answering the phone determined that the property on fire was not within the city limits of Wheeling nor was it covered by a formal contract with the city for fire protection. *See W.Va.Code*, 8–15–3(a) [1972,

1985].[1] Accordingly, the dispatcher contacted the closest volunteer fire departments, those in Triadelphia and Valley Grove. The city's fire department was not contacted.

At 4:30 a.m. Mr. Wolfe, after seeing only a single volunteer firefighter on foot at the scene of the fire in question, called the emergency number and requested firefighting services. This call was not recorded on the dispatcher's logs but the dispatcher admits receiving the call. During this call Mr. Wolfe did not specifically request the defendant's firefighting services. He "expected" them to come because he had paid the fire service fee issued by the city, but at that particular time was concerned only with obtaining firefighting services from whomever could get to the scene of the fire the quickest. The Valley Grove volunteer fire department's equipment and personnel arrived at the scene first, at 4:31 a.m., followed by the Triadelphia volunteer fire department at 4:34 a.m.

The volunteer fire departments had portable generators for some of their equipment at the fire scene and were having trouble getting them started due to the extremely cold weather. Mr. Wolfe called the dispatcher again.[2] Mr. Wolfe during this call specifically asked for the city's fire department to be sent to help. The dispatcher told him that would happen only if the volunteer fire departments at the scene requested the help, which had not happened.

According to Mr. Wolfe, he called again at about 5:00 a.m. and again asked for the city's fire department to be sent because he

had paid the fire service fee issued by the defendant. The dispatcher told him that the city's fire department would not be contacted because the property was not in the city limits and there was no formal contract with the defendant for fire protection. According to Mr. Wolfe, a man came on the phone and told Mr. Wolfe that "we are not coming," even if the fire service fee had been paid.[3]

The fire was completely extinguished at 7:03 a.m. The dwelling was a complete loss.

On the next succeeding business day, the director of the city's finance department signed a check for $12.50 payable to the plaintiffs, as a refund of the paid portion of the fire service fee, as such fee had been "billed in error; property outside city limits." The plaintiffs refused to cash such check.

The depositions indicate that the city's fire department, Elm Grove Station No. 1, could have responded about three times quicker than the volunteer fire departments had done (five minutes, instead of about fifteen to eighteen minutes).

In December, 1985, the plaintiffs brought an action against the defendant, the City of Wheeling, in the Circuit Court of Ohio County, West Virginia ("the trial court"), alleging negligence and breach of contract. In May, 1989, the plaintiffs moved for summary judgment on the negligence claim. On May 17, 1989, the trial court denied the plaintiffs' motion for partial summary judgment, on the negligence claim, on the ground that they had failed as a matter of law to "establish the four factors neces-

---

1. *W.Va.Code,* 8–15–3(a) [1972] provided in relevant part:
   (a) Any municipality shall have plenary power and authority to contract to render services in the prevention and extinguishment of fires upon property located within three miles of its corporate limits: Provided, that no contract entered into under the authority of this section shall operate to impose any greater or different obligation or liability upon the municipality than that with respect to property within its corporate limits[.]
   The 1985 amendment to this statute is not applicable to this case.
   The emergency dispatcher's office has records of those properties covered by a formal contract

under this statute but does not have records of those properties within three miles of the corporate limits for which a fire service fee has been paid without a formal contract.

2. The time of this call is not contained in the dispatcher's logs; it must have been between 4:34 a.m. when Triadelphia's volunteer fire department arrived and about 5:00 a.m. when Mr. Wolfe's next call was made.

3. The emergency dispatcher, a woman, denies that a man came on the phone to talk to Mr. Wolfe.

sary" to bring the plaintiffs within the "special duty" exception to the public duty doctrine.

On June 27, 1989, the trial court certified these questions to this Court: [4]

1) What is the test to determine when a 'special duty' exception to the Public Duty Doctrine exists?

2) Whether the City of Wheeling had a 'special duty' to respond to the plaintiffs' emergency fire call, on January 11, 1984, who resided outside the city limits of Wheeling, but who had paid the City of Wheeling's Fire Service Fee, thereby entitling the plaintiffs to maintain a tort cause of action against the defendant? [5]

II

■ This Court recently, in *Benson v. Kutsch*, 181 W.Va. 1, 380 S.E.2d 36 (1989), discussed the public duty doctrine in the context of a municipality's failure to inspect premises to determine if there are violations of fire or building codes. Following the majority rule applying the public duty doctrine, we refused to hold a municipality liable under those circumstances unless there was a "special relationship" between the local governmental entity and the injured party which created a duty to such individual, and the breach of that special duty proximately caused the injuries. The public duty doctrine is that a local governmental entity's liability for nondiscretionary governmental functions may not be predicated upon the breach of a general duty owed to the public as a whole; instead, only the breach of a duty owed to the particular person injured is actionable. *See, e.g., Williams v. State*, 34 Cal.3d 18, 25, 664 P.2d 137, 140–41, 192 Cal.Rptr. 233,

236–37 (1983) (en banc); *Florence v. Goldberg*, 44 N.Y.2d 189, 195, 375 N.E.2d 763, 766, 404 N.Y.S.2d 583, 586 (1978). *See also* 18 E. McQuillin, *The Law of Municipal Corporations* §§ 53.04b, 53.04c (3d ed. rev. 1984 & Supp.1988); 57 Am.Jur.2d *Municipal, County, School, and State Tort Liability* §§ 140–42 (1988) (collecting cases); annotation, *Modern Status of Rule Excusing Governmental Unit from Tort Liability on Theory that Only General, Not Particular, Duty Was Owed Under Circumstances*, 38 A.L.R. 4th 1194 (1985 & Supp.1989).

[2] As a specific example of the public duty doctrine, the duty to fight fires or to provide police protection runs to all citizens and is to protect the safety and well-being of the public at large; therefore, absent a special duty to the plaintiff(s), no private liability attaches to a municipal fire department's failure to provide adequate fire protection to an individual. *See, e.g., Frye v. Clark County*, 97 Nev. 632, 633–34, 637 P.2d 1215, 1216 (1981); *O'Connor v. City of New York*, 58 N.Y.2d 184, 190, 447 N.E.2d 33, 35, 460 N.Y.S.2d 485, 487 (1983); *Florence v. Goldberg*, 44 N.Y.2d 189, 195, 375 N.E.2d 763, 766, 404 N.Y.S.2d 583, 586 (1978). *See also* 18 E. McQuillin, *The Law of Municipal Corporations* § 53.04e (3d ed. rev. 1984 & Supp.1988); *Prosser & Keeton on the Law of Torts* § 131, at 1049–50 (5th ed. 1984); 57 Am.Jur.2d *Municipal, County, School, and State Tort Liability* §§ 487–88 (1988) (collecting cases).

[3] In this type of case, then, it is critical for the plaintiff(s) to establish a special duty owed to the plaintiff(s) by the local governmental entity: "If a special relation-

---

**4.** *See W. Va.R.App.P.* 13; *W.Va.Code,* 58–5–2 [1967].

**5.** The certified questions do not ask us to decide whether the public duty/special duty dichotomy should be discarded. Some authorities believe the duty of a local governmental entity with respect to nondiscretionary "governmental" functions (as well as for "proprietary" functions) should be determined on exactly the same basis utilized for alleged nongovernmental tortfeasors. That is, the only concerns should be whether harm to the particular plaintiff was reasonably foreseeable and whether the defen-

dant must act or refrain from acting so as to prevent that harm. *See Chambers–Castanes v. King County*, 100 Wash.2d 275, 290, 669 P.2d 451, 460 (1983) (Utter, J., concurring in the result). *But see* syl. pts. 4, 6, 8, *Cootey v. Sun Investment, Inc.*, 68 Haw. 480, 718 P.2d 1086 (1986); *Orzechowski v. State*, 485 A.2d 545, 549 n. 3 (R.I.1984). We do not address this issue in this case because the trial court did not decide the same and certify it to us. *See Horace Mann Insurance Co. v. Leeber*, 180 W.Va. 375, 381 n. 11, 376 S.E.2d 581, 587 n. 11 (1988), and the cases cited there.

ship exists between a local governmental entity and an individual which gives rise to a duty to such individual, and the duty is breached causing injuries, then a suit may be maintained against such entity." Syl. pt. 3, *Benson v. Kutsch*, 181 W.Va. 1, 380 S.E.2d 36 (1989). In *Benson v. Kutsch*, this Court held that the mere failure to inspect for fire or building code violations did not create a special duty. The certified questions in the present case ask us to set forth a test for when a "special duty" exists and to determine, using that test, whether the facts of this case establish a special duty.[6]

■ The courts of the State of New York have decided numerous cases involving the public duty/special duty doctrine. A recent New York case involving police protection formulated a well-conceived general test for determining whether a special duty exists. To establish that a special relationship exists between a local governmental entity and an individual, which is the basis for a special duty of care owed to such individual, the following elements must be shown: (1) an assumption by the local governmental entity, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the local governmental entity's agents that inaction could lead to harm; (3) some form of direct contact between the local governmental entity's agents and the injured party; and (4) that party's justifiable reliance on the local governmental entity's affirmative undertaking. *Cuffy v. City of New York*, 69 N.Y.2d 255, 260, 505 N.E.2d 937, 940, 513 N.Y.S.2d 372, 375 (1987). *Accord*, syl. pt.

4, *Sawicki v. Village of Ottawa Hills*, 37 Ohio St.3d 222, 525 N.E.2d 468 (1988). We adopt this test for this jurisdiction.[7]

The injured party's reliance is as critical in establishing the existence of a "special relationship" as is the local governmental entity's voluntary affirmative undertaking of a duty to act toward the injured party. The element of reliance provides the essential causative link between the special duty assumed by the local governmental entity and the injury. *Cuffy*, 69 N.Y.2d at 261, 505 N.E.2d at 940, 513 N.Y.S.2d at 375.

Indeed, at the heart of most of these 'special duty' cases is the unfairness that the courts have perceived in precluding recovery when a municipality's voluntary undertaking has lulled the injured party into a false sense of security and has thereby induced him either to relax his own vigilance or to forego other available avenues of protection. On the other hand, when the reliance element is either not present at all or, if present, is not causally related to the ultimate harm, this underlying concern is inapplicable, and the invocation of the 'special duty' exception is then no longer justified.

*Id.* (citations omitted).

The element of direct contact is conceptually related to the element of reliance and is a corollary of the need to show a "special relationship" between the plaintiff(s) and the local governmental entity beyond the relationship with the government that all citizens share in common. In addition, the requirement of direct contact serves as a basis for rationally limiting the class of

---

**6.** The facts in this case occurred prior to the enactment in 1986 of the Governmental Tort Claims and Insurance Reform Act, *W.Va.Code*, 29–12A–1 to 29–12A–18. We note that *W.Va. Code*, 29–12A–4(c) [1986] lists four types of duties upon which the tort liability of a political subdivision may be premised, including, in paragraph (2), the negligent performance of acts by employees of political subdivisions while acting within the scope of employment.

**7.** This Court declines to follow the test applied by Illinois courts: (1) the local governmental entity must be uniquely aware of the particular danger or risk to which the plaintiff is exposed; (2) there must be allegations of specific acts or

omissions on the part of the local governmental entity; (3) the specific acts or omissions must be either affirmative or willful in nature; and (4) the injury must occur while the plaintiff is under the direct and immediate control of employees or agents of the local governmental entity. *See, e.g., Barth v. Board of Education*, 141 Ill.App.3d 266, 278, 95 Ill.Dec. 604, 611–12, 490 N.E.2d 77, 84–85 (1986). We believe the fourth element of the Illinois test is too restrictive; the third and fourth elements of the New York test places a more reasonable restriction on the class of individuals to whom the special duty extends.

individuals to whom the local governmental entity's "special" duty extends. *Id.*

There is a split of authorities on the related question of whether a local governmental entity owes a special duty to an individual as a result of the individual's making a request for police protection or firefighting services by utilizing a special emergency telephone number, such as "911," and receiving assurances of help from the dispatcher answering the call. For example, *compare Williams v. City of Tuscumbia,* 426 So.2d 824 (Ala.1983); *De Long v. County of Erie,* 60 N.Y.2d 296, 457 N.E.2d 717, 469 N.Y.S.2d 611 (1983); *Chambers–Castanes v. King County,* 100 Wash.2d 275, 669 P.2d 451 (1983) (en banc); (cause of action stated in these cases) *with Warren v. District of Columbia,* 444 A.2d 1 (D.C.1981) (en banc); *Frye v. Clark County,* 97 Nev. 632, 637 P.2d 1215 (1981) (per curiam); *Ross v. Consumers Power Co.,* 420 Mich. 567, 363 N.W.2d 641 (1984), *aff'g Trezzi v. City of Detroit,* 120 Mich. App. 506, 328 N.W.2d 70 (1982) (statutory immunity for "governmental" functions); (cause of action not stated in these cases). *See also* annotation, *Liability for Failure of Police Response to Emergency Call,* 39 A.L.R. 4th 691 (1985 & Supp.1989); 57 Am. Jur.2d *Municipal, County, School, and State Tort Liability* § 447 (1988). Rather than making sweeping conclusions regarding tort liability based upon the utilization of "911" or similar emergency call systems, this Court believes it is preferable to analyze a claim of a special duty by applying the four-part general test set forth above.

■ In this regard we emphasize that the question of whether a special duty arises to protect an individual from a local governmental entity's negligence in the performance of a nondiscretionary governmental function is ordinarily a question of fact for the trier of the facts. *Estate of Tanasijevich v. City of Hammond,* 178 Ind.App. 669, 675, 383 N.E.2d 1081, 1085 (1978); *De Long v. County of Erie,* 60 N.Y.2d 296, 306, 457 N.E.2d 717, 722, 469 N.Y.S.2d 611, 616 (1983).

■ For example, in the case now before this Court, the fourth element of the test for a special duty, namely, justifiable reliance, cannot be decided as a matter of law on this record. While the plaintiffs, who lived near the city's border, had paid the first half of the city's fire service fee after receiving the city's bill therefor, reasonable minds could differ as to whether the plaintiffs, in light of this billing, were lulled implicitly, during the first two emergency telephone calls, into a false sense of security that the *city's* closest firefighting services would be dispatched.[8] Another question of fact is whether the *city's* fire department's failure to respond to the emergency calls was the proximate cause of the plaintiffs' property being totally damaged. *See Williams v. City of Tuscumbia,* 426 So.2d 824, 826 (Ala.1983).[9] The trial court properly denied the plaintiffs' motion for partial summary judgment, on the negligence claim, in light of the factual issues.

Having answered the certified questions, this Court dismisses this case from our docket and remands the case to the Circuit Court of Ohio County for further proceedings consistent with this opinion.

Certified questions answered; case remanded.

---

**8.** *W.Va.Code,* 8–15–3(a) [1972, 1985], *see supra* note 1, refers only to a "contract," for firefighting services, between a municipality and a person whose property is located outside the corporate limits of the municipality. The billing for, together with payment of, the fire service fee could in some circumstances constitute a "contract," but that question is not before us. In any event, the billing for, and payment of, the fire service fee here would be factors to consider in deciding whether there was justifiable reliance upon the city's fire department in this case.

However, the city's liability to the plaintiffs would be no "greater or different" than that with respect to property within the city's corporate limits, under the language of *W.Va.Code,* 8–15–3(a) [1972]. Thus, a common-law "special duty," not a distinctive statutory duty, would be the basis for the city's tort liability in this case.

**9.** The certified questions in this case do not raise any issue as to damages.