387 S.E.2d 532

**Angus E. PEYTON and James F.B. Peyton**

v.

**CITY COUNCIL OF the CITY OF LEWISBURG; Joseph C. Turley, Michael McClung, William Goodwin, Paul Cooley and Thomas Campbell, Members of the City Council of Lewisburg.**

**No. 19203.**

Supreme Court of Appeals of West Virginia.

Nov. 30, 1989.

Charles E. McElwee, Charleston, for Peyton.

Jesse O. Guills, Jr., Paul S. Detch, Richard H. Lorensen, Pros. Atty., Lewisburg, for City of Lewisburg.

MILLER, Justice:

We accepted this certified question to determine whether the population requirements prescribed by W.Va.Code, 8–2–1 (1969), apply to territorial annexations by municipalities under the provisions of W.Va.Code, 8–6–4 (1969).

█ There are three methods whereby territory may be annexed by a municipality: (1) annexation by minor boundary adjustment;[1] (2) annexation by election;[2] and (3) annexation without an election,[3] which is the procedure sought by the petitioners in this case. Specifically, in March, 1989, the respondents below requested the City of Lewisburg to annex approximately one hundred acres of property immediately adjoining the city. All of the property owners and residents of the proposed area to be annexed signed a petition, with the exception of Angus E. Peyton and James F.B. Peyton. Thus, the petition satisfied the requirement of W.Va.Code, 8–6–4, that it be signed by 60 percent of the freeholders and residents of the territory in question.[4] Following public notice and a hearing on the annexation, the city passed an ordinance annexing the territory.

The Peytons subsequently petitioned the Circuit Court of Greenbrier County to hold the ordinance invalid on the ground that

1. *See* W.Va.Code, 8–6–5 (1969).

2. *See* W.Va.Code, 8–6–2 (1969).

3. W.Va.Code, 8–6–4 (1969), provides, in pertinent part:

"The governing body of a municipality may by ordinance provide for the annexation of additional territory without ordering a vote on the question if (1) sixty percent of the qualified voters of such additional territory file with the governing body their petition to be annexed, and (2) sixty percent of all freeholders of such additional territory, whether they reside or have a place of business therein or not, file with the governing body their petition to be annexed: Provided, that the additional territory shall conform to the requirements of section one [§ 8–2–1], article two of this chapter, and the determination that the additional territory does so conform or that the requisite number of petitioners have filed the required petitions shall be reviewable by the circuit court of the county in which the municipality or the major portion of the territory thereof, including the area proposed to be annexed, is located upon certiorari to the governing body, in accordance with the provisions of article three [§ 53–3–1 et seq.], chapter fifty-three of this Code[.]"

4. In 1989, the legislature amended W.Va.Code, 8–6–4. Under the terms of the amendment, only a majority of the freeholders and residents of the proposed area to be annexed are required to sign a petition. 1989 W.Va. Acts ch. 132.

the territory did not "conform to the requirements of" the incorporation statute, W.Va.Code, 8–2–1.[5] One of the requirements of W.Va.Code, 8–2–1, is that if the proposed area is less than one square mile, it must contain "at least one hundred inhabitants."[6] The Peytons argued that there are not one hundred inhabitants in the annexed area, and, thus, the property could not properly be annexed under W.Va. Code, 8–6–4.

At a hearing held on May 1, 1989, the parties stipulated that the territory in question had less than one hundred residents. The circuit court ruled that the mandates of W.Va.Code, 8–2–1, apply to an annexation under W.Va.Code, 8–6–4, and, consequently, found the ordinance void. The circuit court certified its ruling to this Court.

The Peytons' argument here is very simple: W.Va.Code, 8–6–4, specifically states that the additional territory shall conform to the requirements of W.Va.Code, 8–2–1. One of the requirements of W.Va.Code, 8–2–1, is that the proposed area have one hundred inhabitants. Because the territory in question does not meet this requirement, the ordinance annexing this property is invalid. The Peytons assert that these provisions are clear and unambiguous and should not be construed.

The respondents argue that W.Va.Code, 8–6–4, and 8–2–1, when read together, are ambiguous and that this Court must, therefore, construe the legislative intent behind these two provisions. Specifically, the respondents argue that the population requirement of the incorporation statute, as well as all of the other requirements of W.Va.Code, 8–2–1, apply exclusively to incorporation of a city, town, or village. The respondents assert that it is absurd to apply the standards set forth in W.Va.Code, 8–2–1, to an annexation of a modest amount of territory.[7]

Furthermore, the respondents contend that other requirements in W.Va.Code, 8–2–1, are inconsistent with the concept of an annexation. For example, this provision mandates that the property be "urban in character" and that consideration be given to the "topography thereof, the benefits thereto from incorporation, the amount of uninhabited land required for parks and recreational use and normal growth and development[.]" The petitioners maintain that these criteria have little or no relationship to annexation of land into an existing municipality. Because a municipality already has many of these characteristics, the urban character of the annexed property, its population, and topography are irrelevant.

Moreover, the respondents argue that the requirements of W.Va.Code, 8–2–1, are admirably suited to incorporation of a city or town. Before an area is incorporated, it is necessary to consider if the area is urban in character and whether it has a sufficient

5. Under W.Va.Code, 8–6–4, the circuit court has jurisdiction to review "the determination that the additional territory does so conform" with the provisions of W.Va.Code, 8–2–1. W.Va. Code, 8–2–1, provides:

"Any part of any county or counties, not within any municipality, urban in character, and containing at least one hundred inhabitants (if such part contains less than one square mile), and an average of not less than five hundred inhabitants per square mile (if such part contains one square mile or more), provided such part does not include an amount of territory disproportionate to the number of inhabitants thereof, may be incorporated, depending upon population, as a city, either a Class I, Class II or Class III city, or as a Class IV town or village, as classified in section three [§ 8–1–3], article one of this chapter, upon the conditions and in the manner hereinafter prescribed: Provided, that the exact extent of the territory or portions thereof to be included or excluded shall be within

the reasonable discretion of the county court [county commission], taking into consideration the topography thereof, the benefits thereto from incorporation, the amount of uninhabited land required for parks and recreational use and normal growth and development and the present and probable future uses thereof, so as to prevent hardships and inequities."

6. A square mile equals 640 acres. *See* Am. Jur.2d Desk Book, Item No. 143 at 615 (1979). The area to be annexed is approximately one hundred acres, which is less than one square mile.

7. The respondents did not attempt to have the land annexed by minor boundary adjustment because they believed that W.Va.Code, 8–6–5, required unanimous approval of all the freeholders of the annexed territory. *See In the Matter of the City of Morgantown*, 159 W.Va. 788, 226 S.E.2d 900 (1976).

population to maintain the attendant services of a municipal corporation. Individuals seeking to incorporate property would also be concerned with the geographic size of the territory and the availability of space for parks and recreational uses.

A review of the history of these provisions may prove useful. Under the 1931 Code, the annexation statute, W.Va.Code, 8–2–11 (1931), permitted annexation only by municipal corporations with a population of less than two thousand,[8] required no minimum population in the territory proposed to be annexed, and did not require the territory to conform to the provisions of the incorporation statute. The incorporation statute, W.Va.Code, 8–2–1 (1931), did require a minimum population of one hundred residents in any territory to be incorporated under its provisions.

This statutory scheme was retained in the 1949 amendments to the incorporation statute and the annexation statute.[9] The only significant change was that a municipality could now annex property regardless of its population. The annexation statute still did not require territory proposed to be annexed to meet the standards for incorporation set out in W.Va.Code, 8–2–1 (1949).

The annexation and incorporation provisions were revised again in 1951. The requirement that "the additional territory to be [annexed] shall conform to the requirements" of the incorporation statute appeared for the first time in W.Va.Code, 8–2–8 (1951), which addressed annexation by election.[10] These amendments undoubtedly made annexation more difficult and may have been prompted by the attempted incorporation of the community of Belle, an action which was opposed by certain business and industrial facilities in the area. *See Wiseman v. Calvert,* 134 W.Va. 303, 59 S.E.2d 445 (1950).[11] *See* Note, *Some Municipal Annexation Problems in West Virginia,* 68 W.Va.L.Rev. 394 (1966). The "one hundred inhabitant" requirement found in the incorporation statute remained unchanged.

It should be stressed that W.Va.Code, 8–2–8 (1951), and its predecessors dealt solely with annexation by election. Annexation by election is currently governed by W.Va. Code, 8–6–2 (1969), which still mandates that the territory to be annexed "shall conform to the requirements of [W.Va.Code, 8–2–1]." The respondents in this case are proceeding not under W.Va.Code, 8–6–2, but under W.Va.Code, 8–6–4, which provides for annexation without an election.[12] This provision, which was enacted in 1967,[13]

8. The "under-two-thousand" population provision was enacted to conform with W.Va. Const. art. VI, § 39, which prohibits the legislature from "incorporating cities, towns or villages, or amending the charter of any city, town or village containing a population less than two thousand" by special law or act. Prior to the adoption in 1936 of the Home Rule Amendment, W.Va. Const., art. VI, § 39(a), the legislature could amend the charter and boundaries of municipalities with a population of over two thousand by special act. *See Morris v. Taylor,* 70 W.Va. 618, 74 S.E. 872 (1912); *Cavender v. City of Charleston,* 62 W.Va. 654, 59 S.E. 732 (1907).

9. In 1949, the annexation statute, previously designated W.Va.Code, 8–2–11 (1931), was renumbered W.Va.Code, 8–2–13. *See* 1949 W.Va. Acts ch. 83.

10. *See* 1951 W.Va. Acts ch. 131. The 1951 amendment also permitted "firms or corporations" owning any part of the territory to be annexed to vote on the annexation for the first time. Prior to this amendment, only qualified voters and persons owning property in the territory to be annexed could vote.

11. *Wiseman* held that W.Va.Code, 8–2–1 (1949), was unconstitutional because it did not provide the right to obtain home rule powers provided for by W.Va.Code, 8A–1–1, *et seq.* (1937), upon incorporation. However, at that time, the statutory home rule provisions were only applicable to an existing municipal corporation. *See* W.Va.Code, 8A–2–1 (1937). Belle was not an existing municipal corporation. Therefore, it would appear that the Court in *Wiseman* misconstrued the home rule statutes which came into being as a result of the 1936 Home Rule Amendment to the Constitution of West Virginia. W.Va. Const. art. VI, § 39(a). *See* Fordham, *The West Virginia Municipal Home Rule Proposal,* 42 W.Va.L.Q. 42, 45 (1935).

12. Prior to the enactment of the provision allowing annexation without an election, the only other way property could be annexed was by minor boundary adjustments. *See* W.Va.Code, 8–6–5 (1937).

13. The editor's note to W.Va.Code, 8–6–4, indicating that this section was enacted in 1951 is incorrect. This section was first enacted in

contains the same proviso that the proposed area of annexation "shall conform to the requirements of" the incorporation statute. This language survived the extensive statutory municipal reorganization made in 1969.[14] *See Hogan v. City of South Charleston,* 164 W.Va. 136, 260 S.E.2d 833 (1979).

Perhaps the legislature, like the Court in the *Wiseman* case, had difficulty understanding the complexity of municipal law as it relates to annexation. From a common sense standpoint, it seems unduly restrictive to allow the annexation of territory only if certain population requirements are met. However, it is equally clear that this is what the legislature intended, because since 1951 it has had numerous opportunities to alter this language and has failed to do so.

■ Furthermore, it is also clear that the language in W.Va.Code, 8–6–4, to the effect that the territory to be annexed "shall conform to the requirements of" W.Va. Code, 8–2–1, is unambiguous. We disagree with the respondents' assertion that this language is rendered ambiguous because application of the incorporation requirements to an annexation makes no practical sense. The fact that these requirements are inimical to an annexation attempt does not render them ambiguous.

■ Respondents' quarrel is not with the meaning of these words, but with their mandate. Because of this lack of ambiguity, we are controlled by our traditional principle of statutory analysis set out in Syllabus Point 2 of *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968):

> "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation."

*E.g., Gant v. Waggy,* 180 W.Va. 481, 377 S.E.2d 473 (1988); *Marion County Bd. of Educ. v. Bonfantino,* 179 W.Va. 202, 366 S.E.2d 650 (1988); *Fraley v. Civil Serv. Comm'n,* 177 W.Va. 729, 356 S.E.2d 483

(1987); *Pullano v. City of Bluefield,* 176 W.Va. 198, 342 S.E.2d 164 (1986); *State ex rel. Underwood v. Silverstein,* 167 W.Va. 121, 278 S.E.2d 886 (1981); *Carper v. Kanawha Banking & Trust Co.,* 157 W.Va. 477, 207 S.E.2d 897 (1974); *State v. General Daniel Morgan Post No. 548 V.F.W.,* 144 W.Va. 137, 107 S.E.2d 353 (1959). We also recognize that the operative language of this proviso contains the word "shall," and, as we stated in Syllabus Point 5 of *Rogers v. Hechler,* 176 W.Va. 713, 348 S.E.2d 299 (1986):

> " 'The word "shall" in the absence of language in the statute showing a contrary intent on the part of the legislature, should be afforded a mandatory connotation.' Syl. pt. 2, *Terry v. Sencindiver,* 153 W.Va. 651, 171 S.E.2d 480 (1969)."

■ The language in the statute is clear. Thus, this Court's responsibility is to apply the statute rather than attempt to construe it. Consequently, we hold that the "one hundred inhabitant" restriction in W.Va. Code, 8–2–1, is a mandatory requirement for annexation of territory of less than one square mile under W.Va.Code, 8–6–4, in view of the language in the annexation statute providing that the territory to be annexed "shall conform to the requirements" of W.Va.Code, 8–2–1.

We find the answer of the Circuit Court of Greenbrier County to the certified question to be correct, and its order entered May 25, 1989, is affirmed. Having answered the certified question, this case is dismissed.

*Certified question answered and case dismissed.*

---

1967 as the second paragraph of W.Va.Code, 8–2–8. In 1969, this provision was moved to a separate section and given its current designation. *See* 1969 W.Va. Acts ch. 86.

**14.** 1969 W.Va. Acts ch. 86.