460 S.E.2d 761

**Larry B. HOSE and Delores F. Hose, Plaintiffs Below, Appellants,**

v.

**The BERKELEY COUNTY PLANNING COMMISSION; William J. Teach, P.E., County Engineer; Williamsport Storage Bins, Inc., a Maryland Corporation; Todd Snook; and Fox and Associates, Inc., a Maryland Corporation, Defendants Below, Appellees.**

No. 22537.

Supreme Court of Appeals of West Virginia.

Submitted May 9, 1995.

Decided July 14, 1995.

---

Carolyn Sue Daniel, Shepherdstown, for appellants.

Janet L. Scalia, Asst. Pros. Atty., Martinsburg, Carol Ann Marunich, Furbee Amos Webb & Critchfield, Fairmont, for Berkeley County Planning Com'n and William J. Teach.

John M. Martirano, Patrick J. Nooney, Steptoe & Johnson, Hagerstown, MD, for Williamsport Storage Bins, Inc. and Todd Snook.

Anita R. Casey, Meyer, Darragh, Buckler, Bebenek & Eck, Charleston, for Fox and Associates, Inc.

McHUGH, Chief Justice:

Appellants Larry and Delores Hose instituted an action in the Circuit Court of Berkeley County, West Virginia seeking damages from appellees for changing the flow of surface water which resulted in the flooding of appellants' property. By order of March 10, 1994, the circuit court granted appellees Berkeley County Planning Commission and county engineer William Teach's motion for summary judgment on the basis of governmental immunity. In separate orders dated May 11, 1994, the circuit court granted the motions for summary judgment of appellees Williamsport Storage Bins, Inc. and Todd Snook, its president, as well as of appellee, Fox and Associates, Inc., an architectural firm.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, the order granting summary judgment in favor of the Berkeley County Planning Commission and William Teach is affirmed. However, the orders granting summary judgment in favor of Williamsport Storage Bins, Inc. and Todd Snook and Fox and Associates, Inc. are reversed.

## I.

### Facts

Since 1982, appellants Larry and Delores Hose have owned approximately six acres of land located in Berkeley County, West Virginia. They have operated a vehicular salvage, recycling and repair business on the land since January 1988. Occasionally, water approximately one-inch deep would accumulate on appellants' land as the result of surface run-off from the property lying adjacent to and downstream from their property.

In July 1989, the property lying adjacent to and downstream from appellants' was purchased by appellee Williamsport Storage Bins, Inc., a Maryland corporation. In March 1990, Williamsport's president, Todd Snook, through an agent, applied to appellee Berkeley County Planning Commission (hereinafter "Planning Commission") for approval of proposed construction plans for twelve mini-warehouse buildings, a rental office and an eight-bay car wash. Williamsport hired appellee Fox and Associates, Inc., an architectural firm, to draft the site plans for the proposed construction.

According to the depositions of appellee Todd Snook and appellee William Teach who was acting solely within the scope of his employment as engineer for Berkeley County, fill dirt which had been hauled onto the Williamsport property by Williamsport's predecessor in title blocked the natural drainage swale. Mr. Teach indicated that this caused water to back up on the property adjoining Williamsport's and created excessive water pressure problems in the surrounding areas.

After reviewing the concept plan and preliminary plat prepared by Fox and Associates and submitted by Williamsport, the Planning Commission required Mr. Snook to either remove the dirt or to install a drainage pipe so as to return the flow of water from other landowners' property located upstream,[1] across the Williamsport property, to its original and natural state. The concept and site plans were subsequently amended to reflect the addition of a thirty-six inch drainage pipe.[2] Mr. Snook and Mr. Teach also

---

1. Located upstream from the Williamsport property are a trailer court, a convenience store and an industrial park.

2. The pipe is an underground solid pipe open only at each end. One end of the pipe opens up approximately five feet from appellants' property. It is essentially appellants' argument that the flow of water has been diverted such that it now flows upstream through the pipe.

Though Mr. Teach testified that he informed Williamsport that subdivision regulations require

testified that had the drainage pipe not been installed, the Planning Commission would have required Williamsport to remove the fill dirt.[3] In either case, all of the appellees herein contend that the amount of water which flowed onto appellants' land would have been the same.

Conversely, appellant Larry Hose testified that the Williamsport property had previously been "flood land" and that the appellees built an "earthen dam ... with a 36 inch spillway through [it]. [Mr. Snook] blocks up all that water that used to lay on here and runs it through that spillway and dumps it onto my property."

A public hearing to discuss the proposed plans was scheduled for July 19, 1990. The hearing date was published in the *Martinsburg Journal,* a newspaper of general circulation in the area, and the property was posted. Appellants contend that appellee William Teach, the county engineer with whom appellants had spoken on at least five occasions, had promised to personally notify them of the public hearing date. Mr. Teach did not notify appellants nor did they see the newspaper publication. Consequently, appellants did not attend the public hearing.

In its March 10, 1994 order, the circuit court found that at the July 19, 1990 hearing, Fox and Associates "defended the project and their plans through its agents and advocated acceptance of the plans, at which time the [Planning Commission] voted to accept the staff recommendation to grant preliminary plat Approval." On August 6, 1990, the Planning Commission voted to accept the staff recommendation to grant final plat approval which included the installation of the thirty-six inch drainage pipe.

Since implementation of the construction plans and specifically, the thirty-six inch drainage pipe, appellants have experienced an increase in the accumulation of surface water on their property. Appellants thus contend that the two to three feet of surface water which floods their property approximately three times per year is a direct result of the installation of this pipe.[4]

By order dated March 10, 1994, the circuit court granted the Planning Commission and William Teach's motion for summary judgment, concluding, *inter alia,* that Mr. Teach, as an employee of a political subdivision acting within the scope of his employment, was immune from personal tort liability, pursuant to *W.Va.Code,* 29–12A–13(b) [1986] and that the Planning Commission was similarly immune pursuant to *W.Va.Code,* 29–12A–5(a)(9) [1986].

In two subsequent orders, each dated May 11, 1994, the circuit court granted Williamsport and Snook's joint motion for summary judgment, as well as that of Fox and Associates. All of the parties herein, with the exception of the Planning Commission and Mr. Teach, have represented to this Court on appeal that the May 11, 1994 orders indicate that the motions for summary judgment of Williamsport, Snook and Fox and Associates were based upon the governmental immunity previously afforded the Planning Commission and Mr. Teach. However, our reading of the May 11, 1994 orders does not so indicate. Unlike the March 10, 1994 order granting summary judgment for the Planning Commission and Mr. Teach, these orders do not contain any specific findings of fact or conclusions of law as to either Williamsport, Snook or Fox and Associates.

## II.

### Standard of Review

As indicated above, the circuit court granted summary judgment in favor of

---

that a pipe be installed to carry the upstream drainage through the property, he did not specifically recommend a thirty-six inch pipe. *See* Berkeley County Subdivision Regulation 608, paragraph 3, *infra,* at n. 7. However, he did review the pipe size and concluded that the pipe, which would carry a one hundred year storm, exceeded the minimum requirement that it carry a twenty-five year storm.

3. Mr. Teach indicated that he had previously been contacted by the Berkeley County Public Service Sewer District because the fill dirt deposited by Williamsport's predecessor in title, James Jones, had blocked the water upstream from the Williamsport property. According to Mr. Teach, the Berkeley County Public Service Sewer District had considered filing a civil action against Mr. Jones to require him to remove the fill dirt and to restore the natural drainage swale.

4. As a result of this flooding, the number of vehicles appellants are able to store in their salvage yard has been greatly reduced.

all of the appellees herein. As we stated in syllabus point 1 of *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994), "[a] circuit court's entry of summary judgment is reviewed *de novo.*" A motion for summary judgment, under *West Virginia Rules of Civil Procedure* 56, is to be granted by a circuit court only when the moving party shows there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Accordingly, the standard for granting a motion for summary judgment has been articulated by this Court as follows:

'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963).

Syl. pt. 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992). At the summary judgment stage, the circuit court's function is not " 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' " *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 57, 459 S.E.2d 329, 336 (1995) (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986)). This Court must, therefore, draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Masinter v. WEBCO,* 164 W.Va. 241, 242, 262 S.E.2d 433, 435 (1980).

### III.

*Appellees Berkeley County Planning Commission and William Teach*

#### A.

The stated purposes of the Governmental Tort Claims and Insurance Reform Act, found in *W.Va.Code,* 29–12A–1, *et seq.,* "are to limit liability of political subdivisions and provide immunity to political subdivisions in certain instances and to regulate the costs and coverage of insurance available to political subdivisions for such liability." *W.Va. Code,* 29–12A–1 [1986]. *See O'Dell v. Town of Gauley Bridge,* 188 W.Va. 596, 425 S.E.2d 551 (1992); *Randall v. Fairmont City Police Dept.,* 186 W.Va. 336, 412 S.E.2d 737 (1991). Upon finding that "political subdivisions of the State were unable to obtain affordable tort liability insurance coverage without reducing the quantity and quality of traditional governmental services[,] *W.Va.Code,* 29–12A–2[,]" the West Virginia legislature "specified seventeen instances in which political subdivisions would have immunity from tort liability. *W.Va.Code,* 29–12A–5(a)." *O'Dell,* 188 W.Va. at 600, 425 S.E.2d at 555. (footnote omitted).

■ It was pursuant to *W.Va.Code,* 29–12A–5(a)(9) [1986] that the circuit court concluded, as a matter of law, that the Planning Commission [5] was immune from liability in this case. *W.Va.Code,* 29–12A–5(a)(9) [1986] provides:

A political subdivision is immune from liability if a loss or claim results from:

. . . .

Licensing powers or functions including, but not limited to, the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority[.]

Appellants maintain, however, that the Planning Commission's employee and county engineer, William Teach, was negligent when he approved Williamsport's plans to install a thirty-six inch drainage pipe in that he knew or should have known that it would flood their property. Thus, it is appellants' con-

---

5. Though appellants have foregone their claim against Mr. Teach individually, they maintain that his actions, as the agent and employee of the Planning Commission nevertheless resulted in harm to their property. The circuit court specifically found in its March 10, 1994 order that under *W.Va.Code,* 29–12A–13(b) [1986], which states, in relevant part, that " '[i]n no instance may an employee of a political subdivision acting within the scope of his employment be named as a defendant[,]' " Mr. Teach could not be individually liable. We agree with this conclusion.

tention that the Planning Commission is not immune from liability, under the aforementioned *W.Va.Code*, 29–12A–5(a)(9) [1986], where it has *negligently* approved plans and specifications.

Instead, appellants argue that the Planning Commission is liable in damages for the flooding of their property under *W.Va.Code*, 29–12A–4(c)(2) [1986], which states:

> *Subject to sections five and six [§§ 29–12A–5 and 29–12A–6] of this article, a po-litical subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary func-tion, as follows:*
>
> . . . .
>
> Political subdivisions are liable for inju-ry, death, or loss to persons or property caused by the *negligent performance of acts by their employees while acting with-in the scope of employment.*

(emphasis added). We disagree and find *W.Va.Code*, 29–12A–4(c)(2) [1986] to be inap-plicable to the case before us.

■ This issue is controlled by the follow-ing traditional principle of statutory analysis: " 'Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.' Syllabus Point 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968)." Syl. pt. 1, *Peyton v. City Council of Lewis-burg*, 182 W.Va. 297, 387 S.E.2d 532 (1989).

■ The plain language of *W.Va.Code*, 29–12A–4(c)(2) [1986] expressly provides that the liability of a political subdivision for inju-ry to property allegedly caused by the negli-gent performance of acts by their employees is *"[s]ubject to sections five and six [§§ 29–12A–5 and 29–12A–6] of this article."* Thus, pursuant to *W.Va.Code*, 29–12A–4(c)(2) [1986] and *W.Va.Code*, 29–12A–5(a)(9) [1986], a political subdivision is immune from liabili-ty if a loss or claim results from licensing powers or functions such as the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, or-der or similar authority, regardless of wheth-er such loss or claim is caused by the negli-gent performance of acts by the political subdivision's employees while acting within the scope of employment.

### B.

Alternatively, appellants maintain that the Planning Commission is not immune from tort liability in this case based upon their special relationship with the Planning Com-mission's agent and employee, William Teach. Appellants contend that Mr. Teach breached the duty arising from that relation-ship, causing injury to appellants' property.

In *Wolfe v. City of Wheeling*, 182 W.Va. 253, 387 S.E.2d 307 (1989), the plaintiffs' home was destroyed by fire as a result of the failure of the city's fire department to re-spond to plaintiffs' emergency fire call. This Court discussed, in detail, the public duty doctrine and those circumstances under which a "special relationship" exists between a local governmental entity and an injured party. Under the public duty doctrine, "a local governmental entity's liability for non-discretionary governmental functions may not be predicated upon the breach of a gen-eral duty owed to the public as a whole[.]" *Id.*, 182 W.Va. at 256, 387 S.E.2d at 310. On the other hand,

> '[i]f a special relationship exists between a local governmental entity and an individual which gives rise to a duty to such individu-al, and the duty is breached causing inju-ries, then a suit may be maintained against such entity.' Syl. pt. 3, *Benson v. Kutsch*, 181 W.Va. 1, 380 S.E.2d 36 (1989).

Syl. pt. 1, *Wolfe, supra.*[6]

Subsequently, in *Randall v. Fairmont City Police Dept.*, 186 W.Va. 336, 412 S.E.2d 737

---

**6.** In syllabus point 2 of *Wolfe, supra*, this Court adopted the following general test for determin-ing whether a special relationship exists:

> To establish that a special relationship exists between a local governmental entity and an

individual, which is the basis for a special duty of care owed to such individual, the following elements must be shown: (1) an assumption by the local governmental entity, through prom-ises or actions, of an affirmative duty to act on

(1991), we discussed whether a special duty relationship existed and was breached where one person was killed and another injured by an individual who had previously threatened and harassed one of the victims and on whom there was an outstanding arrest warrant. Though one of the victims had previously reported to the police her fear for her safety and life, the police took no action to either apprehend or arrest the perpetrator who ultimately shot the victims, ironically, in the police department parking lot.

Our determination of whether there existed a special duty relationship in that case was based primarily upon our reading of *W.Va.Code,* 29–12A–5(a)(5) [1986], the statute which immunizes a political subdivision from tort liability for "failure to provide, or the method of providing, police, law enforcement or fire protection[.]" We heeded the following "general rule of construction in governmental tort legislation cases favoring liability, not immunity: *unless the legislation has clearly provided for immunity under the circumstances, the general common-law goal of compensating injured parties for damages caused by negligent acts must prevail.*" *Randall,* 186 W.Va. at 347, 412 S.E.2d at 748 (citations omitted and emphasis added). We thus held in syllabus point 8:

> *W.Va.Code,* 29–12A–5(a)(5) [1986], which provides, in relevant part, that a political subdivision is immune from tort liability for 'the failure to provide, or the method of providing, police, law enforcement or fire protection[,]' is coextensive with the common-law rule not recognizing a cause of action for the breach of a general duty to provide, or the method of providing, such protection owed to the public as a whole. *Lacking a clear expression to the contrary,* that statute incorporates the common-law special duty rule and does not immunize a breach of a special duty to provide, or the method of providing, such protection to a particular individual.

*Id.* (emphasis added).

In *O'Dell v. Town of Gauley Bridge,* 188 W.Va. 596, 425 S.E.2d 551 (1992), three civil actions against various governmental entities were consolidated for decision by this Court regarding whether *W.Va.Code,* 29–12A–5(a)(11) [1986] immunizes political subdivisions in personal injury actions where the claim or loss results from a claim covered by workers' compensation or employer's liability laws. Following our methodology in *Randall, supra,* we examined the applicable statute, *W.Va.Code,* 29–12A–5(a)(11) [1986], which provides that a political subdivision is immune from tort liability for " '*any* claim covered by any workers' compensation law or employer's liability law.' " *O'Dell,* 188 W.Va. at 609, 425 S.E.2d at 564 (emphasis provided), to determine whether the legislature had clearly provided for immunity " 'regardless of the existence of a special relationship/special duty.' " *Id.* (citing *Randall,* 186 W.Va. at 348, 412 S.E.2d at 748).

We found there to be no ambiguity in the pertinent statute which would require us to interpret it in favor of the plaintiffs injured by the governmental tortfeasors. *Id.* We thus gave the words in the statute their common, ordinary and accepted meanings, particularly the word "any," syl. pts. 1 and 2, *Thomas v. Firestone Tire & Rubber Co.,* 164 W.Va. 763, 266 S.E.2d 905 (1980), and held that *"W.Va.Code,* 29–12A–5(a)(11) clearly contemplates immunity for political subdivisions from tort liability in actions involving claims covered by workers' compensation[.]" *O'Dell,* 188 W.Va. at 609, 425 S.E.2d at 564.

Applying the aforementioned principles to the case before us then, the pertinent inquiry is whether *W.Va.Code,* 29–12A–5(a)(9) [1986], which provides, in relevant part, that a political subdivision is immune from tort liability for losses or claims resulting from "the issuance ... of ... *any* permit ... [or] approval," expressly provides for immunity regardless of the existence of a special relationship/special duty. We find that *W.Va.Code,* 29–12A–5(a)(9) [1986] contains no ambiguity as to the immunity afforded a political subdivision.

As we stated in *O'Dell, supra:*

> the local governmental entity's agents and the injured party; and (4) that party's justifiable reliance on the local governmental entity's affirmative undertaking.

behalf of the party who was injured; (2) knowledge on the part of the local governmental entity's agents that inaction could lead to harm; (3) some form of direct contact between

'1. In the absence of any specific indication to the contrary, words used in a statute will be given their common, ordinary and accepted meanings. Syl. pt. 1, *Tug Valley Recovery Center v. Mingo County Commission,* [164 W.Va. 94], 261 S.E.2d 165 (1979).

'2. The word "any," when used in a statute, should be construed to mean any.'

*O'Dell,* 188 W.Va. at 609, 425 S.E.2d at 564 (*quoting Thomas v. Firestone Tire & Rubber Co.,* 164 W.Va. 763, 266 S.E.2d 905 (1980)).

■ We hold, therefore, that *W.Va.Code,* 29–12A–5(a)(9) [1986] clearly contemplates immunity for political subdivisions from tort liability for any loss or claim resulting from licensing powers or functions such as the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority, regardless of the existence of a special duty relationship.

### C.

■ As our discussion above indicates, the Planning Commission and Mr. Teach are immune from tort liability in this case pursuant to *W.Va.Code,* 29–12A–5(a)(9) [1986] and 29–12A–13(b) [1986]. Though the circuit court correctly came to this conclusion, it, inexplicably, went on to make findings of fact and conclusions of law on the issue of negligence which were irrelevant to its decision. The circuit court found, *inter alia:*

6. Fill dirt had been hauled onto the south end of the Snook property, which blocked the natural drainage swale.

7. Because the natural drainage of water was blocked, a pipe was necessary pursuant to The Berkeley County Subdivision Regulations.[7]

8. The installed pipe only carried the natural drainage that would normally have gone onto Mr. Hose's property had the fill dirt not been deposited there.

. . . .

11. The Plaintiffs did not attend the public hearing which discussed the proposed plans on July 19, 1990, even though the hearing date was published in the *Martinsburg Journal,* a newspaper of general circulation in the area, and the land was posted.

12. The Plaintiffs and [Mr. Teach] have had at least five conversations where Mr. Teach informed them that the natural flow of water would go onto their property and that they would be notified about the public hearing because the land would be posted and it would be published in the newspaper.

(footnote added). The circuit court concluded, as a matter of law, that fill dirt had been hauled onto the Snook property and blocked the natural drainage swale thereby necessitating the installation of a pipe, pursuant to the Berkeley County Subdivision Regulations.

Appellants maintain, however, that there is conflicting evidence as to what the natural drainage would normally have been and that, not only did the thirty-six inch drainage pipe not return the water to its natural flow, but it

---

**7.** Findings of fact 13, 14 and 15 specifically cited the following subdivision regulations:

Paragraph 3 of Berkeley County Subdivision Regulation 608 states:
The subdivision developer/owner shall construct and/or install such drainage structures and/or pipes as are necessary to prevent erosion damage and to satisfactorily carry off surface waters.
Berkeley County Subdivision Regulation 609.4(e) states that each person, corporation, or other entity which makes any surface changes shall be required, among other things, to:
(1) Collect on-site surface runoff and dispose of it to the point of discharge into the common natural watercourse of the drainage area.

(2) Handle existing off-site runoff through his development by designing it to adequately handle storm runoff from a fully developed area upstream.
Berkeley County Subdivision Regulation 713.5 provides, in relevant part:
1. Minimum Control Requirements
A. Areas not in a mapped local hazard zone, as contained herein, shall require that all developments provide management measures necessary to maintain the post-development peak discharges for a 24 hour, 2– and 10–year frequency storm event at a level that is equal to or less than the respective 24 hour, 2– and 10–year pre-development peak discharge rates, through Storm Water Management practices that control the volume, timing, and rate of flows.

created a totally different flow of surface water across the Williamsport property. Moreover, the appellants maintain that the appellees violated Berkeley County Subdivision Regulation 713.5, which requires, in relevant part, that

all developments provide management measures necessary to maintain the *post-development* peak discharges for a 24 hour, 2– and 10–year frequency storm event *at a level that is equal to or less than* the respective 24 hour, 2– and 10–year *pre-development* peak discharge rates, through Storm Water Management practices[.]

(emphasis added). Though the circuit court's order referred generally to this and other subdivision regulations, it did not specifically find that this regulation had been met. Indeed, appellants maintain that the flooding of their property is evidence that the post-development storm water level exceeds pre-development, in violation of the aforementioned regulation.

While the circuit court properly granted the Planning Commission and Mr. Teach's motion for summary judgment based upon their immunity from tort liability under *W.Va.Code*, 29–12A–5(a)(9) [1986] and 29–12A–13(b) [1986], it inappropriately determined that there were no genuine issues of material fact as to the negligence of the appellees herein. *See Lenox v. McCauley*, 188 W.Va. 203, 423 S.E.2d 606 (1992) (where evidence is conflicting or such that reasonable men may draw different conclusions from facts, issue of negligence is a question for jury determination).

## IV.

### *Appellees Williamsport, Todd Snook and Fox and Associates*

It is the contention of appellees Williamsport, Todd Snook and Fox and Associates that they installed the thirty-six inch drainage pipe at the direction of the Planning Commission and the Berkeley County Subdivision Regulations. Thus, they maintain that the statutory immunity afforded the Planning Commission and William Teach should be extended to them under the principles of the government contractor defense.[8]

As a general proposition, " 'one who contracts with a public body for the performance of public work, if not guilty of negligence or wilful tort ... is entitled to share the immunity of the public body from liability for incidental injuries necessarily involved in the performance of the contract.' " *Perdue v. S.J. Groves and Sons Company*, 152 W.Va. 222, 227–28, 161 S.E.2d 250, 254–55 (1968) (*quoting* 9 ALR 3d § 3 p. 389). *See Beaver Valley Power v. National Eng.*, 883 F.2d 1210, 1216 (3d Cir.1989). By their own admission, these appellees had not contracted with a public body for the performance of public work, but are private entities which submitted construction plans to the Planning Commission for their approval in pursuit of a private business venture. In that these appellees are undisputedly *not* government contractors, we find their reliance on the government contractor defense to be without merit.

Moreover, we have previously stated that where a statute's language is clear and unambiguous, we will not resort to the rules of interpretation but rather we will accept its plain meaning. Syl. pt. 1, *Peyton v. City Council of Lewisburg*, 182 W.Va. 297, 387 S.E.2d 532 (1989); syl. pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1986). As we previously indicated, *W.Va.Code*, 29–12A–5(a)(9) [1986] expressly immunizes a political subdivision from liability if a loss or claim results from licensing powers or functions such as the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority. However, *W.Va.Code*, 29–12A–5(a)(9) [1986] does not expressly confer similar immunity upon private individuals or entities to which a political subdivision has issued, denied, suspended, or revoked or has failed or refused to issue, deny, suspend or revoke any

---

**8.** As we previously indicated, the two May 11, 1994 orders granting these appellees' respective motions for summary judgment were void of any findings of fact or conclusions of law for our review.

permit, license, certificate, approval, order or similar authority.

Accordingly, we hold that while *W.Va.Code,* 29–12A–5(a)(9) [1986] expressly immunizes a political subdivision from liability if a loss or claim results from licensing powers or functions such as the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority, such immunity does not extend to private individuals or entities to which a political subdivision has issued, denied, suspended, or revoked or has failed or refused to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority.

## V.

For reasons discussed herein, the March 10, 1994 order granting the Berkeley County Planning Commission and William Teach's motion for summary judgment is hereby affirmed only insofar as it determined that they were immune from liability pursuant to *W.Va.Code,* 29–12A–5(a)(9) [1986] and 29–12A–13(b) [1986]. However, the May 11, 1994 orders granting Williamsport Storage Bins, Inc. and Todd Snook's joint motion for summary judgment and Fox and Associates, Inc.'s motion for summary judgment are hereby reversed.

Affirmed, in part; reversed, in part.

BROTHERTON and RECHT, JJ., did not participate.

FOX, Judge, and MILLER, Retired J., sitting by temporary assignment.