# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## September 2013 Term

**FILED**

**October 24, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 12-0824

**LORRAINE M. UPCHURCH,
ADMINISTRATRIX OF THE ESTATE OF
JOE EDWARD MALLORY, DECEASED,**
Plaintiff Below, Petitioner

**V.**

**MCDOWELL COUNTY 911 AND
JANE DOE DISPATCHER,**
Defendants Below, Respondents

---

**Appeal from the Circuit Court of Kanawha County
Honorable James C. Stucky, Judge
Civil Action No. 10-C-72**

**AFFIRMED**

---

Submitted: October 16, 2013
Filed: October 24, 2013

JB Akers                                     M. Andrew Brison
Akers Law Offices, PLLC                      Anspach Meeks Ellenberger, LLP
Charleston, West Virginia                    Charleston, West Virginia
Attorney for the Petitioner                  Attorney for the Respondents

The Opinion of the Court was delivered PER CURIAM.

**SYLLABUS BY THE COURT**

1.      "A circuit court's entry of summary judgment is reviewed *de novo*."

Syllabus point 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

2.      "W. Va. Code, 29-12A-5(a)(5) [1986], which provides, in relevant part,

that a political subdivision is immune from tort liability for 'the failure to provide, or the

method of providing, police, law enforcement or fire protection[,]' is coextensive with the

common-law rule not recognizing a cause of action for the breach of a general duty to

provide, or the method of providing, such protection owed to the public as a whole. Lacking

a clear expression to the contrary, that statute incorporates the common-law special duty rule

and does not immunize a breach of a special duty to provide, or the method of providing,

such protection to a particular individual." Syllabus point 8, *Randall v. Fairmont City Police

Department*, 186 W. Va. 336, 412 S.E.2d 737 (1991).

3.      "If a special relationship exists between a local governmental entity and

an individual which gives rise to a duty to such individual, and the duty is breached causing

injuries, then a suit may be maintained against such entity." Syllabus point 3, *Benson v.

Kutsch*, 181 W. Va. 1, 380 S.E.2d 36 (1989).

4.      "To establish that a special relationship exists between a local

i

governmental entity and an individual, which is the basis for a special duty of care owed to such individual, the following elements must be shown: (1) an assumption by the local governmental entity, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the local governmental entity's agents that inaction could lead to harm; (3) some form of direct contact between the local governmental entity's agents and the injured party; and (4) that party's justifiable reliance on the local governmental entity's affirmative undertaking." Syllabus point 2, *Wolfe v. City of Wheeling*, 182 W. Va. 253, 387 S.E.2d 307 (1989).

**Per Curiam:**

The petitioner herein and plaintiff below, Lorraine M. Upchurch ("Ms. Upchurch"), Administratrix of the Estate of Joe Edward Mallory ("Mr. Mallory"), appeals from orders entered June 6, 2012, and June 12, 2012, by the Circuit Court of Kanawha County. By the June 6, 2012, order, the circuit court found that the respondents herein and defendants below, McDowell County 911 and Jane Doe Dispatcher[1] (collectively "McDowell County 911"), were entitled to summary judgment because Ms. Upchurch had failed to prove that they owed a special duty to her decedent, Mr. Mallory. Thereafter, by order entered June 12, 2012, the circuit court extended the time within which Ms. Upchurch was required to file her notice of appeal to this Court. Before this Court, Ms. Upchurch challenges the circuit court's award of summary judgment to the respondents. Upon our review of the parties' arguments, the appendix record, and the pertinent authorities, we affirm the circuit court's decision. In summary, we find that Ms. Upchurch failed to prove that the respondents, McDowell County 911 and Jane Doe Dispatcher, owed a special duty of care to her decedent, Mr. Mallory, as contemplated by Syllabus point 2 of *Wolfe v. City of Wheeling*, 182 W. Va. 253, 387 S.E.2d 307 (1989).[2]

---

[1]The referenced 911 dispatcher has been identified as Martha Heffner ("Ms. Heffner").

[2]The text of Syllabus point 2 of *Wolfe v. City of Wheeling*, 182 W. Va. 253, 387 S.E.2d 307 (1989), is set forth in Section III, *infra*.

1

# I.

## FACTUAL AND PROCEDURAL HISTORY

The facts giving rise to the instant proceeding are not generally disputed by the parties. At approximately 10:00 a.m., on Saturday, January 19, 2008, Mr. Mallory[3] called McDowell County 911 to request assistance at his residence because a man,[4] who was later identified as Robert Wayne Johnson, Jr. ("Mr. Johnson"),[5] was banging on the front door of his home and threatening to harm him.[6] McDowell County 911 dispatcher, Ms. Heffner, answered Mr. Mallory's call. Ms. Heffner obtained Mr. Mallory's name, address,[7] and telephone number, and asked him the nature of his problem. Mr. Mallory reported that a man was threatening to kick in his door and harm him. During the call, Ms. Heffner could hear the man yelling, and Mr. Mallory gave Ms. Heffner a description of the man and the man's

---

[3]Mr. Mallory was seventy-one years old at the time of the events at issue herein.

[4]Although Mr. Mallory was familiar with the man, he did not know the man's name. It was later determined that the man banging on Mr. Mallory's front door on the morning of January 19, 2008, was Mr. Johnson.

[5]It is not clear how old Mr. Johnson was at the time of these events.

[6]Some time earlier, Mr. Mallory apparently had sold a hunting rifle to Mr. Johnson's father, who was a neighbor of Mr. Mallory. After the sale, the Johnsons discovered that the gun was defective and needed a part. Thus, Mr. Johnson went to Mr. Mallory's home to recover the cost of said part, which was estimated to be approximately $25.00. At some point, it appears that Mr. Mallory's brother went to the home of Mr. Johnson's father and paid him this disputed sum, but it is not apparent when this payment was made or whether Mr. Johnson or Mr. Mallory was aware of it.

[7]Mr. Mallory's residence was located approximately thirty minutes away from the closest law enforcement detachment.

2

vehicle.  Ms. Heffner told Mr. Mallory that she would alert the police.

After the call from Mr. Mallory ended, Ms. Heffner called West Virginia State Police Trooper Jason Keffer ("Trooper Keffer"), who was stationed in McDowell County.[8] Trooper Keffer informed Ms. Heffner that he was between shifts and was not yet ready for duty, and he asked Ms. Heffner to call Mr. Mallory back to obtain more information about his request for assistance.

Ms. Heffner then called Mr. Mallory and informed him a trooper was on the way to his house.  After learning that the man had left, Ms. Heffner explained to Mr. Mallory that there was no longer a need for a trooper to come to his home.  Mr. Mallory expressed fear that the man would return and hurt him, and indicated that he had a shotgun that he could use to protect himself.  Ms. Heffner cautioned Mr. Mallory not to shoot anyone and instructed him to call her back if the man returned.  Ms. Heffner also told Mr. Mallory that she would have a trooper call him so he could explain why he had requested assistance.

After her second conversation with Mr. Mallory, Ms. Heffner called Trooper Keffer and relayed that the man had left Mr. Mallory's residence, that she had warned him

---

[8]Ms. Heffner did not call the McDowell County Sheriff's Department ("Sheriff's Department") because the deputy that she believed to be on duty was having car problems, and she told Trooper Keffer that she had not contacted the Sheriff's Department for this reason.

3

not to shoot anyone, and that she had instructed him to call her back if the man returned.

Following this exchange, the parties dispute whether Trooper Keffer also called Mr. Mallory to check on his safety and to ascertain whether he needed to go to his home. This telephone call was not recorded. However, it is undisputed that Trooper Keffer did not travel to Mr. Mallory's home on Saturday, January 19, 2008. Moreover, Mr. Mallory did not call McDowell County 911 for further assistance on January 19, 2008.

The next morning, Sunday, January 20, 2008, Pat Johnson ("Mrs. Johnson"), Mr. Johnson's stepmother, called McDowell County 911 to report that she believed that Mr. Johnson had killed a man. It was later determined that Mr. Johnson had broken into Mr. Mallory's home through his back door at approximately 11:30 p.m., on Saturday, January 19, 2008, and had robbed and killed him. Mr. Johnson allegedly killed Mr. Mallory by stabbing him over thirty times in the head, face, and arms, which wounds indicated that Mr. Mallory had tried to defend himself.[9]

Thereafter, Ms. Upchurch filed the instant wrongful death action against the West Virginia Department of Military Affairs and Public Safety; James W. Spears; West

_____

[9]Mr. Johnson was convicted of the first degree murder of Mr. Mallory and currently is incarcerated for this crime.

4

Virginia State Police; Colonel Timothy S. Pack; John Doe State Trooper;[10] McDowell County Commission; McDowell County Sheriff's Department; John Doe McDowell County Deputy Sheriff; McDowell County 911; Jane Doe Dispatcher;[11] Robert Wayne Johnson, Sr.;[12] and Pat Johnson. In her complaint, Ms. Upchurch alleged that the named defendants had contributed to Mr. Mallory's death through their negligence and wanton and reckless conduct and sought wrongful death damages. McDowell County 911 moved for summary judgment arguing that it did not owe a special duty to Mr. Mallory. By order entered June 6, 2012, the circuit court granted summary judgment to McDowell County 911[13] concluding that

> Plaintiff [Ms. Upchurch] can present no evidence at trial to support the legal position that [Mr.] Mallory justifiably relied upon any conduct of [Ms.] Heffner that created a special relationship between the two. As a result, Plaintiff [Ms. Upchurch] cannot, as a matter of law, demonstrate that a special duty was created upon Defendant [McDowell County 911] that resulted in any harm to [Mr.] Mallory.
>
> Because no special relationship was created between

[10]John Doe State Trooper has been identified as Trooper Keffer.

[11]*See supra* note 1.

[12]Robert Wayne Johnson, Sr., is Mr. Johnson's father.

[13]During the underlying proceedings, the West Virginia State Police defendants settled Ms. Upchurch's claims against them. Additional defendants below, the McDowell County Commission; McDowell County Sheriff's Department; and John Doe McDowell County Deputy Sheriff, were dismissed by agreement of the parties prior to the circuit court's summary judgment ruling. Finally, as part of its June 12, 2012, order, the circuit court dismissed defendants Robert Wayne Johnson, Sr., and Pat Johnson. Thus, although the style of the circuit court's June 6, 2012, order references additional defendants who had been dismissed, the only defendants who were parties to the summary judgment proceedings were McDowell County 911 and Jane Doe Dispatcher.

[Mr.] Mallory and [Ms.] Heffner, Defendant [McDowell County 911] is immune from this litigation pursuant to West Virginia Code, § 29-12A-5.

By subsequent order entered June 12, 2012, the circuit court extended the time within which Ms. Upchurch was required to file her appeal from the circuit court's earlier summary judgment order to this Court.[14]  From these orders, Ms. Upchurch now appeals to this Court.

## II.

## STANDARD OF REVIEW

The orders from which Ms. Upchurch appeals involve an award of summary judgment to the respondents.  Our review of the lower court's summary judgment order is plenary: "A circuit court's entry of summary judgment is reviewed *de novo*."  Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).  In light of this standard, we proceed to consider the parties' arguments.

---

[14]Although the circuit court's June 12, 2012, order is entitled "Order Granting Plaintiff's Rule 59(e) Motion [sic] Dismissing Pat Johnson and Robert Wayne Johnson, Sr. and Extending Timeframe for Filing Notice of Appeal," the only substantive rulings contained therein pertain to the dismissal of defendants Pat Johnson and Robert Wayne Johnson, Sr., and the extension of the appeal period.  The circuit court's order does not contain a specific ruling upon Ms. Upchurch's Rule 59(e) motion to alter or amend its June 6, 2012, summary judgment order.  Neither can we ascertain the precise relief requested by Ms. Upchurch in her Rule 59(e) motion insofar as said motion is not contained in the appendix record presented to this Court for consideration on appeal.

# III.

## DISCUSSION

The sole dispositive issue in this case[15] is whether McDowell County 911 owed

Mr. Mallory a special duty of care. If such a special duty of care exists, then McDowell

County 911 is amenable to suit for Mr. Mallory's wrongful death. If no such special duty

of care exists, then McDowell County 911 is immune from suit as a political subdivision.

We find, under the facts of this case, that Ms. Upchurch has failed to prove that McDowell

County 911 owed Mr. Mallory a special duty of care.

Pursuant to W. Va. Code § 29-12A-5(a) (1986) (Repl. Vol. 2013),

[a] political subdivision is immune from liability if a loss
or claim results from:

. . . .

(4) Adoption or failure to adopt a law, including, but not
limited to, any statute, charter provision, ordinance, resolution,
rule, regulation or written policy; [or]

---

[15]While Ms. Upchurch also assigns error to the circuit court's consideration of Trooper Keffer's testimony regarding his alleged telephone conversation with Mr. Mallory because such testimony is inadmissible pursuant to the Dead Man's Statute, W. Va. Code § 57-3-1 (1937) (Repl. Vol. 2012), we find this argument to lack merit in light of our recent decision invalidating this provision. *See* Syl. pt. 6, *State Farm Fire & Cas. Co. v. Prinz*, 231 W. Va. 96, 743 S.E.2d 907 (2013) ("Because it addresses evidentiary matters that are reserved to and regulated by this Court pursuant to the Rule-Making Clause, Article VIII, § 3 of the West Virginia Constitution, West Virginia Code § 57-3-1 (1937), commonly referred to as the Dead Man's Statute, is invalid, as it conflicts with the paramount authority of the West Virginia Rules of Evidence.").

(5) Civil disobedience, riot, insurrection or rebellion or the failure to provide, or the method of providing, police, law enforcement or fire protection[.]

We have interpreted this provision as follows:

> W. Va. Code, 29-12A-5(a)(5) [1986], which provides, in relevant part, that a political subdivision is immune from tort liability for "the failure to provide, or the method of providing, police, law enforcement or fire protection[,]" is coextensive with the common-law rule not recognizing a cause of action for the breach of a general duty to provide, or the method of providing, such protection owed to the public as a whole. Lacking a clear expression to the contrary, that statute incorporates the common-law special duty rule and does not immunize a breach of a special duty to provide, or the method of providing, such protection to a particular individual.

Syl. pt. 8, *Randall v. Fairmont City Police Dep't*, 186 W. Va. 336, 412 S.E.2d 737 (1991).

Thus, "[i]f a special relationship exists between a local governmental entity and an individual which gives rise to a duty to such individual, and the duty is breached causing injuries, then a suit may be maintained against such entity." Syl. pt. 3, *Benson v. Kutsch*, 181 W. Va. 1, 380 S.E.2d 36 (1989). We further have held that,

> [t]o establish that a special relationship exists between a local governmental entity and an individual, which is the basis for a special duty of care owed to such individual, the following elements must be shown: (1) an assumption by the local governmental entity, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the local governmental entity's agents that inaction could lead to harm; (3) some form of direct contact between the local governmental entity's agents and the injured party; and (4) that party's justifiable reliance on the local governmental entity's affirmative undertaking.

Syl. pt. 2, *Wolfe v. City of Wheeling*, 182 W. Va. 253, 387 S.E.2d 307 (1989). Finally, "[t]he

8

question of whether a special duty arises to protect an individual from a local governmental entity's negligence in the performance of a nondiscretionary . . . function is *ordinarily* a question of fact for the trier of the facts." Syl. pt. 3, in part, *id.* (emphasis added).

Applying these holdings to the facts of the case *sub judice*, we conclude that Ms. Upchurch has failed to prove the existence of a special relationship between McDowell County 911 and Mr. Mallory such as would form the basis of a special duty of care to him. *See* Syl. pt. 2, *Wolfe*, *id.* While it is undisputed that Ms. Heffner had direct contact with Mr. Mallory, Ms. Upchurch is unable to establish the existence of the remaining elements of the special relationship test. Although Ms. Heffner initially informed Mr. Mallory that she would send a law enforcement officer to his home during their first telephone conversation, when Ms. Heffner spoke to Mr. Mallory a second time and learned that Mr. Johnson was no longer at Mr. Mallory's home, she explained to Mr. Mallory that there was no longer a need for a law enforcement officer to come to his home. Likewise, insofar as Ms. Heffner had advised Mr. Mallory that a law enforcement officer would not be coming to his home since Mr. Johnson had vacated the premises, Mr. Mallory could not have justifiably relied upon Ms. Heffner's statement during their first conversation that a law enforcement officer would be dispatched to his home.[16] Finally, in light of the fact that Mr. Johnson had left Mr.

---

[16]To the extent that Ms. Upchurch asserts an inadequate response by law enforcement in this case, her arguments tend to focus more upon Trooper Keffer's failure to travel to Mr. Mallory's home to investigate his complaints that led him to call McDowell
(continued...)

9

Mallory's property, and given that Mr. Mallory did not call back for further assistance, Ms. Heffner could not have known that her failure to take further action would result in Mr. Mallory's death.[17]

---

[16](...continued)
County 911 rather than upon perceived shortcomings in McDowell County 911's response to his call. Insofar as Trooper Keffer and the West Virginia State Police have settled Ms. Upchurch's claims against them, any action or failure to act by Trooper Keffer is not relevant to whether McDowell County 911 acted or failed to act in response to Mr. Mallory's call for emergency assistance. Rather, having reviewed the McDowell County 911 recordings of the events of Saturday, January 19, 2008, we find that Ms. Heffner accurately relayed the information she obtained from Mr. Mallory to Trooper Keffer and that Trooper Keffer then exercised his discretion as to whether Mr. Mallory's call warranted a law enforcement officer to travel to his home.

[17]We further find that McDowell County 911 and Ms. Heffner also are immune from suit in this case pursuant to W. Va. Code § 24-6-8 (1997) (Repl. Vol. 2013), which provides as follows:

> A public agency or a telephone company participating in an emergency telephone system or a county which has established an enhanced emergency telephone system, and any officer, agent or employee of the public agency, telephone company or county is not liable for damages in a civil action for injuries, death or loss to persons or property arising from any act or omission, except willful or wanton misconduct, in connection with developing, adopting or approving any final plan or any agreement made pursuant to this article, or otherwise bringing into operation or participating in the operation of an emergency telephone system or an enhanced emergency telephone system pursuant to this article.

Simply stated, Ms. Upchurch has not proven that either McDowell County 911 or Ms. Heffner exhibited "willful or wanton misconduct," *id.*, in response to Mr. Mallory's call for emergency assistance.

10

**IV.**

**CONCLUSION**

For the foregoing reasons, we conclude that the circuit court correctly awarded summary judgment to the respondents herein, McDowell County 911 and Jane Doe Dispatcher, because Ms. Upchurch failed to establish that they owed a special duty of care to her decedent, Mr. Mallory, as contemplated by Syllabus point 2 of *Wolfe v. City of Wheeling*, 182 W. Va. 253, 387 S.E.2d 307 (1989). Accordingly, the June 6, 2012, and June 12, 2012, orders of the Circuit Court of Kanawha County are hereby affirmed.

Affirmed.