**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**City of Marmet, a municipal corporation,**
**Defendant/Third Party Plaintiff below, Petitioner,**

**vs) No. 17-0493** (Kanawha County Civil Action No. 15-C-1789)

**Anthony Hunter, Administrator of the Estate of Kareem Hunter, Deceased,**
**Plaintiff below, Respondent.**

**FILED**
**May 17, 2018**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

The City of Marmet (hereinafter "Marmet"), by attorneys Duane J. Ruggier II, Jacob D. Layne, and Evan S. Olds, appeals the decision of the Circuit Court of Kanawha County denying its motion for summary judgment. On appeal to this Court, Marmet contends the circuit court erred by failing to recognize its immunity from suit based upon the actions of a Marmet police officer in the underlying civil action. Anthony Hunter (hereinafter "the respondent"), by attorney Michael T. Clifford, filed a timely response.

This Court has carefully reviewed the arguments of counsel, appendix record, and applicable precedent, and this case is mature for consideration. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion. For the reasons expressed below, we reverse the decision of the circuit court and remand this case for entry of an order granting Marmet's motion for summary judgment, finding that Marmet is entitled to statutory immunity under West Virginia Code § 29-12A-5(a)(5) (2013), and finding no special relationship between the decedent and Marmet.

I. Factual and Procedural History

On the evening of September 24, 2013, Marmet police were summoned to an apartment building in Marmet, West Virginia, by a 911 telephone call from an individual named "Wendy"[1] reporting "people outside yelling and screaming." This telephone call was apparently prompted by the brother of resident Kelsey Legg based upon a disturbance he had

---

[1]The record indicates that the individual's real name may be Lindy Saunders, but the call report identifies her as "Wendy."

1

heard in his sister's apartment. Kareem Hunter (hereinafter "the decedent"), the son of the respondent, was visiting Ms. Legg's apartment.[2] The 911 caller did not report an altercation or other issues of concern inside the apartment building. She simply reported a noise disturbance outside the building.

When a Marmet police officer arrived outside the apartment building, one of the two men[3] who allegedly fatally beat the decedent spoke with the officer and explained, "Me and my girlfriend had an argument. I'm leaving." The police officer thereafter departed the premises. The decedent's body was later discovered buried in a shallow grave in Raleigh County, West Virginia. The decedent had apparently been attacked by Miguel Quinones and Deveron Patterson while at Ms. Legg's apartment and thereafter transported and buried in Raleigh County.[4]

On September 22, 2015, the respondent filed a civil action against Marmet, asserting a single cause of action for negligence. The respondent alleged that Marmet had caused the death of his son by failing to more fully investigate the 911 call and failing to enter the residence where the decedent was allegedly murdered. Subsequent to discovery, Marmet filed a motion for summary judgment, asserting immunity pursuant to West Virginia Code § 29-12A-5(a)(5) and (10) (2013).[5] Marmet further argued that the respondent had failed to offer evidence of a special relationship between the decedent and Marmet sufficient to overcome statutory immunity. The circuit court denied Marmet's motion for summary judgment by order entered April 28, 2017. Marmet now appeals, contending that the circuit court erred in denying its motion for summary judgment.

---

[2]According to information provided in the record, the decedent was twenty-nine years of age.

[3]The two men were later identified as Miguel Quinones and Deveron Patterson.

[4]The record in this civil action does not clearly indicate the status of the criminal investigations of Mr. Quinones and Mr. Patterson.

[5]The purposes of the West Virginia Governmental Tort Claims and Insurance Reform Act "are to limit liability of political subdivisions and provide immunity to political subdivisions in certain instances and to regulate the costs and coverage of insurance available to political subdivisions for such liability." W.Va. Code § 29-12A-1 (2013).

## II. Standard of Review

As this Court explained in *City of Saint Albans v. Botkins*, 228 W.Va. 393, 719 S.E.2d 863 (2011), the denial of a motion for summary judgment is interlocutory and appealable only in certain circumstances. *Id*. at 397-98, 719 S.E.2d at 867-68; *see also* Syl. Pt. 8, *Aetna Cas. & Surety v. Fed. Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). We have recognized that where denial of summary judgment is predicated on issues of immunity, permitting an appeal "is the only way to preserve the intended goal of an immunity ruling: to afford public officers more than a defense to liability by providing them with 'the right not to be subject to the burden of trial.'" 228 W.Va. at 397, 719 S.E.2d at 867 (quoting *Robinson v. Pack*, 223 W.Va. 828, 833, 679 S.E.2d 660, 665 (2009)).

Syllabus point one of *Findley v. State Farm Mutual Automobile Insurance Co.*, 213 W.Va. 80, 576 S.E.2d 807 (2002), provides the applicable standard of review for this circumstance: "This Court reviews *de novo* the denial of a motion for summary judgment, where such a ruling is properly reviewable by this Court." We also utilize the standard generally employed in review of summary judgment efficacy: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna*, 148 W.Va. at 160, 133 S.E.2d at 771. With these standards as guidance, we examine the arguments of the parties.

## III. Discussion

The dispositive issue in this case is whether Marmet is entitled to statutory immunity under West Virginia Code § 29-12A-5(a)(5), essentially codifying the common law public duty doctrine, for "the failure to provide, or the method of providing, police, law enforcement or fire protection."[6] Explaining the concepts underlying that statutory provision, this Court has emphasized the interaction between statutory immunity and the common law public duty doctrine, holding as follows in syllabus point eight of *Randall v. Fairmont City Police Department*, 186 W.Va. 336, 412 S.E.2d 737 (1991):

---

[6]Marmet also claims entitlement to statutory immunity under West Virginia Code § 29-12A-5(a)(10), regarding immunity for failure to make an inspection to determine whether the property "complies with or violates any law or contains a hazard to health or safety." Based upon this Court's conclusion that immunity applies to the claims asserted against Marmet under West Virginia Code § 29-12A-5(a)(5), it is unnecessary to address potential immunity under other sections.

W. Va. Code, 29-12A-5(a)(5) [1986], which provides, in relevant part, that a political subdivision is immune from tort liability for "the failure to provide, or the method of providing, police, law enforcement or fire protection[,]" is *coextensive with the common-law rule* not recognizing a cause of action for the breach of a general duty to provide, or the method of providing, such protection owed to the public as a whole. Lacking a clear expression to the contrary, that statute incorporates the common-law special duty rule and does not immunize a breach of a special duty to provide, or the method of providing, such protection to a particular individual.

186 W.Va. at 339, 412 S.E.2d at 740 (emphasis added).

This Court has also articulated the basis for the public duty doctrine, as follows:

Under the public duty doctrine, a government entity or officer cannot be held liable for breaching a general, non-discretionary duty owed to the public as a whole. "Often referred to as the 'duty to all, duty to no one' doctrine, the public duty doctrine provides that since government owes a duty to the public in general, it does not owe a duty to any individual citizen." For example, under the public duty doctrine, "the duty to fight fires or to provide police protection runs to all citizens and is to protect the safety and well-being of the public at large[.]" Generally, no private liability attaches when a fire department or police department fails to provide adequate protection to an individual. The public duty doctrine is restricted to "liability for nondiscretionary (or 'ministerial' or 'operational') functions[.]"

*W. Va. State Police v. Hughes*, 238 W.Va. 406, 412, 796 S.E.2d 193, 199 (2017) (footnotes omitted).

Thus, the appropriate method of analysis is quite clear; where a plaintiff's injury has its genesis in alleged "failure to provide, or the method of providing" police protection, the political subdivision is immune unless a special relationship had been established between the political subdivision and the injured party. W.Va. Code § 29-12A-5(a)(5), in part. This concept was traditionally embodied as an exception to public duty

doctrine and is now recognized as an exception to statutory immunity. In syllabus point seven of *Randall*, this Court explained the special relationship principle as follows:

> "To establish that a special relationship exists between a local governmental entity and an individual, which is the basis for a special duty of care owed to such individual, the following elements must be shown: (1) an assumption by the local governmental entity, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the local governmental entity's agents that inaction could lead to harm; (3) some form of direct contact between the local governmental entity's agents and the injured party; and (4) that party's justifiable reliance on the local governmental entity's affirmative undertaking." Syl. pt. 2, *Wolfe v. City of Wheeling*, 182 W.Va. 253, 387 S.E.2d 307 (1989).

*Randall*, 186 W.Va. at 339, 412 S.E.2d at 740; *see also Jeffrey v. W.Va. Dep't of Pub. Safety*, 198 W.Va. 609, 614, 482 S.E.2d 226, 231 (1996) (explaining "duty imposed upon a governmental entity is one owed to the general public, and unless the injured party can demonstrate that some special relationship existed between the injured person and the allegedly negligent entity, the claim is barred.").

This Court has evaluated several instances in which this scenario has arisen. For example, we addressed the special relationship issue in *Upchurch v. McDowell Co.*, 232 W.Va. 91, 750 S.E.2d 644 (2013), within the context of a wrongful death suit against a county 911 dispatch after a victim's murder. We examined the special relationship exception and ultimately found that the plaintiff had "failed to prove the existence of a special relationship between McDowell County 911 and [the plaintiff] such as would form the basis of a special duty of care to him." *Id*. at 96, 750 S.E.2d at 649; *see also Miller v. Elkins-Randolph Cty. Emergency Squad Inc.*, No. 14-0929, 2015 WL 3677209, at *3 (W.Va. June 12, 2015) (memorandum decision) (holding "there is no evidence in the record on appeal to support the contention that respondent or any of its agents ever contracted, promised, or by its actions, assumed, an affirmative duty to provide emergency medical services to the decedent.").

Similarly, in *Rhodes v. Putnam County Sheriff's Department*, 207 W.Va. 191, 530 S.E.2d 452 (1999), this Court analyzed the arguments of a former employer of a jail inmate who had been shot when that inmate escaped from jail. *Id*. at 193, 530 S.E.2d at 454. The Court rejected the plaintiff's argument that a special relationship existed, reasoning that

although there had been direct contact between the injured party and the Sheriff's Department, there was no evidence that anyone at the Sheriff's Department had reason to know that the inmate was going to harm the plaintiff. Moreover, there was no evidence that the Sheriff's Department had promised the injured party that it would prevent harm to the injured party and no evidence that the injured party relied on any alleged promises or protection. *Id*. at 194, 530 S.E.2d at 455.

In the present case, Marmet contends that the special relationship exception is not applicable because the respondent failed to satisfy the requirement of demonstrating any relationship between the decedent and the Marmet police department. Conversely, the respondent contends that genuine issues of material fact exist on that issue, precluding summary judgment.

We find no merit to the respondent's arguments. There are no genuine issues of material fact precluding summary judgment in this case. Issues of fact surrounding the presence of a special relationship exist in circumstances wherein there has been some degree of relationship established by the evidence. For example, in *Bowden v. Monroe County Commission*, 239 W.Va. 214, 800 S.E.2d 252 (2017), this Court held that genuine issues of material fact *did exist* where a dog warden had been informed of the vicious nature of dogs that subsequently caused injury. *Id*. at 220, 800 S.E.2d at 260. Similarly, in *Walker v. Meadows*, 206 W.Va. 78, 521 S.E.2d 801 (1999), this Court held that genuine issues of material fact existed regarding whether a county sheriff and commission had a special relationship with parents whose daughter had been scheduled to be taken into custody for mental hygiene evaluation. *Id*. at 80, 521 S.E.2d at 803.

Unlike the scenarios encountered in *Bowden* and *Walker*, there is no evidence of a special relationship in this case. The respondent has not presented any facts supporting an assumption of duty to act on behalf of the decedent, knowledge that inaction could lead to his harm, direct contact with him, or justifiable reliance by the decedent upon Marmet. Each of those components must be demonstrated to establish a special relationship. Syl. Pt. 7, *Randall*, 186 W.Va. at 339, 412 S.E.2d at 740. This Court has observed that

> [t]he injured party's reliance is as critical in establishing the existence of a "special relationship" as is the local governmental entity's voluntary affirmative undertaking of a duty to act toward the injured party. The element of reliance provides the essential causative link between the special duty assumed by the local governmental entity and the injury.

*Wolfe*, 182 W.Va. at 257, 387 S.E.2d at 311 (citations omitted).

The respondent concedes that he is not sure whether the decedent was still alive at the time the officer arrived outside the building, that the officer had no knowledge of the decedent or his assault, and that the officer had no reason to suspect that the decedent was in danger. The officer responded to a noise disturbance call and was informed that a man had been arguing with his girlfriend and was leaving.[7] The officer had no reason to attempt to gain entrance into any of the apartments. This is precisely the situation the public duty doctrine envisions; the police do not have a duty to a particular member of the public with whom the police have no special relationship. "[P]ublic officials are not guarantors of public safety and, as such, do not have a duty of universal care to protect the general public from harm or accident." *McCuiston v. Butler*, 509 S.W.3d 76, 80 (Ky. Ct. App. 2017).

For the foregoing reasons, we reverse the decision of the circuit court and remand for entry of an order granting Marmet's motion for summary judgment, finding that Marmet is entitled to statutory immunity under West Virginia Code § 29-12A-5(a)(5), and finding no special relationship between the decedent and Marmet.

Reversed and remanded.

CONCURRED IN BY:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

---

[7]The respondent also attempts to persuade this Court that the officer had a duty to investigate based upon guidelines contained in West Virginia Code of State Regulations § 149-3-1 to -12 (2017), permitting law enforcement to conduct a walk-through of the premises where domestic violence has been reported among family or household members. The most obvious flaw in the respondent's argument is that this was not a domestic violence call; it was simply a noise disturbance call, and the officer had no reasonable basis to assume that a domestic violence situation was unfolding. The 911 caller did not report an assault or battery among family or household members. Moreover, even if those regulations did apply, they do not require a walk-through; they simply provide that an officer "may enter and conduct a search of the premises relevant to the incident when written or verbal consent has been given to do so or when exigent circumstances exist." W.Va. C.S.R. § 149-3-6.2.b.